[Civ. No. 653.   Fifth Dist.   Nov. 17, 1966.]

JOSEPH LINZSEY, a Minor, etc., et al., Plaintiffs and Appellants, v. ELOISE P. DELGADO et al., Defendants and Respondents.

J. Adrian Palmquist, Francis T. Cornish and Anthony J. Scolora for Plaintiffs and Appellants.

Frank K. Richardson for Defendants and Respondents.

McMURRAY, J. pro tem.*—After a six-day jury trial, the jury returned a unanimous verdict against appellants after deliberating 57 minutes. Judgment was entered on the same day; motion for new trial was made, heard, and denied, and appellants filed a timely notice of appeal from the judgment.

The general tenor of the arguments presented here is epitomized by the fact that while the transcripts and briefs designate appellants' name as being spelled "Lindsey" the record shows the name was, in fact, and was supposed to be corrected to read, "Linzsey." Appellants' statement of facts contained in their briefs and almost consented to by respondents, is highly misleading when the record is read.

The facts appear, as viewed most favorably to respondents, that on April 17, 1963, one Rapisura parked his car in a driveway behind one Preston; this driveway was on the south side of an east-west street, 47th Avenue, in Sacramento County. Later Bob Naves parked his car behind Rapisura. At about 7 p.m. Preston wished to get out of the driveway and in order to enable him to do so, Naves backed his car out, crossing over a ditch culvert to back up the road to the west, in the eastbound lane of 47th. He backed far enough to allow Rapisura room to remove his car. There was a narrow, gravel shoulder

---

*Assigned by the Chairman of the Judicial Council.

and a ditch on both sides of the road in this area of 47th, and although Naves pulled as far onto the shoulder as possible, he was still partially on the two-lane road, the pavement of which was about 20 feet wide. There was still room for eastbound traffic to pass Naves without crossing over the center line. Rapisura then backed out of the drive to within 30 feet of Naves' car, stopping in the middle of the eastbound lane of traffic just west of the driveway. Preston then began to back out of the driveway.

At about this time respondent Delgado, driving respondent San Jose Chemical Company's station wagon on a delivery, was proceeding east on 47th with her niece, at a rate of some 30 to 35 miles per hour. They crossed over railroad tracks located 1,500 feet, more or less, west of the Naves and Rapisura cars; Delgado then saw the Naves car sitting on the shoulder with its lights off, swung slightly to the left to clear it, and slowed down, pulling to a complete stop directly behind Rapisura's car which blocked her lane; it had its lights on. She did not cross over the white line while passing Naves' car, and she was not over that line when she stopped. She remained stopped behind Rapisura for some period of time, between 15 seconds and two minutes.

Mitchell Balakin, who had been drinking so heavily that he failed a sobriety test later, was proceeding west on 47th. He had crossed a controlled intersection some 600 to 1,300 feet east of the three cars, and proceeded toward them at about 35 miles an hour. As he neared Rapisura's car, Balakin's Chevrolet panel truck suddenly swerved toward the stationary cars; he missed the Rapisura vehicle but struck the left rear end of Delgado's car. His truck swung to the right and proceeded some 220 feet further west, ending up in a ditch on the north side of 47th. Balakin was thrown out of the truck at some point in this trip.

Appellants were discovered lying injured in the north ditch in the path of Balakin's truck; their bicycle was some 180 feet from the point of impact between Balakin and Delgado. Appellant Jerry Linzsey, 15, was some 30 feet further west, and appellant Joseph Linzsey was some 45 to 55 feet further west, under the front axle of the truck.

At the trial both boys claimed they could remember nothing about the accident except crossing the railroad tracks while on the right-hand side of the road headed east, with Jerry pumping and Joseph riding on either the handlebars or crossbars. However, in his pretrial deposition, Jerry positively placed

them as riding on the left side of 47th, headed east on the northern shoulder, facing westbound traffic. At one time during the trial he also said they were on the north side of 47th. Their bicycle had no light on it and no one saw the boys until after the accident.

At the trial the parties stipulated that the sun set at 6:44 p.m. on the date of the accident, all cars involved except Naves had their lights on. It was just "getting dark" and several witnesses said it was dark enough to require headlights.

As in most cases there are conflicts in the evidence, including conflicts relative to the lighting conditions, the fact that the rear end of the Delgado car may have been projecting across the white line, and that perhaps the Delgado car was in motion at the time Balakin struck it.

Appellants contend that reversible error was committed because (1) the court confused the jury by instructing them on issues which were not presented, (2) the court failed to instruct the jury on issues which were presented, (3) the court gave erroneous instructions on issues which were presented, and (4) the net result was prejudicial to appellants and prevented them from having a fair trial. As in so many instances when errors in instructions are urged upon an appellate court, the arguments become somewhat ephemeral and attempt to hinge a reversal upon a particular word or phrase. These arguments are usually not particularly persuasive when it is remembered that a trial takes place in a court room with all of its attendant tensions and urgencies. To require a nicety of expression which can be arrived at only by studious and meticulous enunciation of abstract principles might be desirable; however, under the pressure of trial such precision of diction is often difficult to attain.

In the case before us there was, indeed, some confusion due to the fact that just before argument to the jury the action was dismissed as to Balakin, Naves and Rapisura. Appellants complain that this caused confusion in the trial but overlook the fact that they did consent to this settlement and contributed much more to the confusion than did respondents.

The instructions about which appellants argue most vigorously are certain instructions on contributory negligence, appellants contending that as a matter of law they could not have been guilty of contributory negligence. The court properly instructed that any contributory negligence on Jerry's part could not affect Joseph. The evidence warranted

instructions based upon an inference that could be drawn therefrom that appellants were riding on the wrong side of the road, as is shown by Jerry's deposition and his testimony at the trial. This, together with the ultimate resting place of the victims, could have given rise to an inference that they were riding on the wrong side of the road and that had they had lights on, the driver Balakin might have been able to miss them. Certainly there was sufficient evidence to support an inference that appellants were riding on the wrong side of the road without lights.

It is to be noted that by its verdict the jury must have found that respondents' acts were not a proximate cause of the injuries to Jerry and Joseph, since it is not to be presumed that they ignored the instructions as to contributory negligence having no effect upon Joseph; they were instructed that they were not to so consider any such evidence.

█ , Appellants also argue that the instruction on imminent peril was erroneous and prejudicial to them. This argument is not here considered since the instruction was requested by appellants and was given as requested.

█ Appellants state that by refusing a requested instruction on concurring negligence the court erred. However, the court gave a BAJI instruction which is a correct statement of law and essentially the same as that offered by appellants. Appellants say their instruction used the phrase ''*a* proximate cause,'' while the court used the words ''*the* proximate cause.'' This contention is not borne out by the record. The court used the words ''a proximate cause.'' This kind of argument is perhaps the least convincing type that can be made to an appellate court.

Appellants further complain that an instruction about parking on the highway was limited to ''a party.'' This appears to be an attempt to add confusion by urging that those persons who had been parties were no longer parties, and the jury may have been misled by such instruction. This argument is manifestly sophistic in view of the court's general language describing a person's negligence arising from the violation of a statute, and the likelihood of confusion on the part of the jury is remote.

█ Certain other instructions relative to the effect of a violation of a statute were given at appellants' request, and appellants cannot now be heard to complain that these instructions were given.

Appellants contend that instructions on varying amounts of

care applicable to various objects should have been given. The court did give BAJI instructions similar to those requested, and the instruction given was approved in *Novak* v. *Peira*, 175 Cal.App.2d 29, 32-33 [345 P.2d 349]. These instructions do not vary substantially from those offered by appellants except that the court said the degree of care varies with the danger apparent instead of with the nature of the object operated. A similar instruction using "danger" has been approved. (See *Cucinella* v. *Weston Biscuit Co.*, 42 Cal.2d 71 [265 P.2d 513].)

Appellants also urge error in that there was no evidence to warrant an instruction on intervening acts of a third party. However, from the facts it is apparent that at least Balakin's negligence could have been found to be an intervening act if he crossed over the line and hit Delgado, since whatever her negligence she did not cause that act. The argument is totally devoid of merit.

At this stage of the proceedings appellants complain that there was no instruction given on the duty to stay on the right side of the road. Appellants admit they did not request such an instruction and in the absence of such request a party may not complain of a failure to give specific desired instructions. (*Gould* v. *Samuels*, 132 Cal.App.2d 459, 469-470 [282 P.2d 566]; *Kabzenell* v. *Stevens*, 168 Cal.App.2d 370 [336 P.2d 250].) Although appellants urge that their rights should not turn on such "chess-like" technicalities, nevertheless the rule is clear and is based on a sound policy of not requiring the courts to try civil cases for attorneys.

Appellants also argue that their "due care" instructions should have been given. The requested instructions were not proper under the facts, and the general instructions regarding burden of proof and presumptions as given by the court were far better. Again, appellants cannot complain at this late date of the court's failure to give an instruction when an improper instruction was requested and denied. Appellants' instruction was not sufficiently concise to properly cover the ground which they intended to have it cover; the submitted instruction was improper, and the court properly refused it.

The record before us reveals that the trial judge scrupulously examined and made many corrections and interlineations to the submitted instructions; he gave reasons for his refusal of instructions, and generally performed his duties in

an admirable manner. No error is shown which would justify a reversal, and a thorough reading of the record shows no miscarriage of justice.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.