[Civ. No. 51089. Second Dist., Div. Four. May 30, 1978.]

KENNETH E. KEITH, Plaintiff and Appellant, v.
S. S. GOLDSTONE et al., Defendants and Respondents.

## COUNSEL

Brown & Amato and Newton R. Brown for Plaintiff and Appellant.

Lillick McHose & Charles and Kenneth R. Chiate for Defendants and Respondents.

## OPINION

**HUPP, J.***—In this action for damages for personal injuries brought under the Longshoremen's and Harbor Workers' Compensation Act as amended in 1972 (hereafter LHWCA), 33 United States Code section 901 et seq., judgment was rendered for defendants following a jury verdict for defendants. Plaintiff appeals, contending that the trial court committed prejudicial error in the giving of certain instructions and in the failure to give other instructions. We affirm the judgment.

*Assigned by the Chairperson of the Judicial Council.

Appellant (hereafter referred to as plaintiff) claimed to have been injured on January 16, 1974, while working as a longshoreman on the defendant vessel, the S.S. *Goldstone,* owned by the defendant Goldstone Shipping Corporation (hereafter referred to collectively as the vessel or defendant). Plaintiff was an employee of Crescent Wharf and Warehouse Company, a stevedore, who was hired to discharge a cargo of olive casks. There was evidence that the casks, of about 500 pounds each, were stowed on stripped dunnage (lengths of scrap lumber) placed 6 to 8 inches apart on the steel deck. When plaintiff started to work, the deck was wet from one or more causes, including the possibility of leakage of brine from the casks, rain, and surplus water resulting from wetting the casks to reduce the amount of leakage. Plaintiff called attention to the conditions and sawdust was obtained by plaintiff from the ship's crew and from the stevedore's supply on the dock, and was spread over the area to absorb the water. Plaintiff commenced to work, worked about two hours, alleged that he hurt his back when he slipped on the slippery deck while moving a cask, continued to work for another three and a half hours, but later reported himself injured. Plaintiff's liability theories were that the defendant was negligent in the manner in which the casks were stowed (saying that they should have been stowed on a solid floor of dunnage) and cared for during the voyage (saying that they should have been wet down more frequently than they were to reduce the amount of leakage of brine). There was a good deal of evidence on these and other points which will not be set forth here at length, since the factual detail is not relevant on the appeal. The grounds for reversal urged by plaintiff are that the trial court committed error in the giving of several instructions, and in the failure to give certain instructions offered by plaintiff, and that the errors urged were prejudicial.

 The most important item to resolve is whether the trial court erred in defining the duty of the defendant as follows in an instruction which the court itself drafted: "Where a shipowner has notice of an obvious danger, his duty of care to longshoremen exposed to such danger is as follows: A shipowner is not liable to the longshoremen for physical harm caused to them by any activity or condition on the ship whose danger is known or obvious to them, unless the shipowner should anticipate the harm despite such knowledge or obviousness. [¶] Under this rule, a vessel is liable to longshoremen only for injuries resulting from obvious dangers which it should reasonably anticipate that the longshoremen acting reasonably would not be able to avoid." Plaintiff had, instead, requested the following instruction: "The defendant shipowner is under a legal obligation to the plaintiff to exercise

reasonable care under the circumstances to furnish him a safe place to work. Where the condition complained of is an open and obvious danger, the shipowner may not escape liability for its failure to provide the plaintiff a safe place to work if the harm to the plaintiff could have been anticipated by the shipowner despite the obviousness of the danger."

The difference illustrates a divergence of view as to the standard of care which should be applied to the owner of a vessel under LHWCA following the 1972 amendments. Plaintiff's contention is that the shipowner has an affirmative duty to take steps to furnish a "safe place to work" even as to "obvious" dangers. (We will deal with the ambiguity in plaintiff's requested instruction as to whether the duty is one framed in terms of negligence or absolute liability later in this opinion.) As framed by the trial court, the question as it applies to obvious dangers (the condition of the deck here must be said to fall into that category) is not whether the defendant has a duty to fix it, but whether the defendant must warn if he should foresee harm despite the obvious nature of the danger to plaintiff.

In turning to the law on the subject, we find that the liability of a shipowner to a longshoreman employed by a stevedore is governed by federal law. (*Pope & Talbot, Inc.* v. *Hawn* (1953) 346 U.S. 406 [98 L.Ed. 143, 74 S.Ct. 202]; *Kelleher* v. *Empresa Hondurena de Vapores, S.A.* (1976) 57 Cal.App.3d 52, 58 [129 Cal.Rptr. 32].) Prior to 1972, federal law on the subject was, in essence, derived from concepts of admiralty law and provided for certain elements of absolute liability on the part of the vessel, particularly through the "seaworthy ship" doctrine. All of that changed in 1972. In that year Congress adopted major amendments to LHWCA, the principal features of which were that a greatly improved system of workmen's compensation was provided for longshoremen working for stevedore companies, and the vessel's exposure was limited to liability for its own negligence. Thus, the liability of the defendant in this case is defined by 33 United States Code section 905(b), which reads in part: "In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person . . . may bring an action against such vessel . . . . The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred."

Congress, however, did not elucidate in the statute with more detail as to what new standards of duty were to be used to measure the liability of

the vessel. The area was left open to the courts and the result has been a plethora of cases laying down the rules, not always consistently.

Certain common elements appear. All of the cases agree that what is intended is a uniform federal rule, not the application of varying state law concepts of negligence. (See authorities cited in the *Kelleher* case, *supra*, at p. 58.) This conclusion was derived by the courts expressing it from the report of the Senate committee reporting out the 1972 amendments to LHWCA, and is not in dispute.

The task then is to determine the federal law. Because federal law appears to vary somewhat among the circuits, we think that the task is more narrowly defined as determining to the best of our ability what law is applied in the Ninth Circuit to the end that, pending resolution of any conflict among the federal Courts of Appeals, the same rules will be applied in federal and state courts in California.

■ First, we turn to plaintiff's criticism of the court-drafted instruction given by the court, quoted above. We agree that the instruction accurately states the law. If there is a flaw in the instruction, it is that it states the law more favorably for plaintiff than was required. The instruction states the essence of Restatement Second of Torts, section 343A, which reads in pertinent part: "(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

The Court of Appeals for the Ninth Circuit has not expressly considered whether the giving of an instruction based on the Restatement, section 343A, subdivision (1), is approved for LHWCA "obvious danger" cases. Restatement "obvious danger" instructions as applied to a vessel under LHWCA have received the approval of Courts of Appeals for the Second, Fourth, and Fifth Circuits. (*Napoli* v. [*Transpacific Carriers, etc.*] *Hellenic Lines* [*sic*] (2d Cir. 1976) 536 F.2d 505, 508-509; *Munoz* v. *Flota Merchante Grancolombiana, S.A.* (2d Cir. 1977) 553 F.2d 837, 841; *Anuszewski* v. *Dynamic Mariners Corp., Panama* (4th Cir. 1976) 540 F.2d 757, 759, cert. den., 429 U.S. 1098 [51 L.Ed.2d 545, 97 S.Ct. 1116]; *Gay* v. *Ocean Transport & Trading, Ltd.* (5th Cir. 1977) 546 F.2d 1233, 1238, 1241; *Brown* v. *Mitsubishi Shintaku Ginko* (5th Cir. 1977) 550 F.2d 331, 333-334.) The Court of Appeals for the Third Circuit apparently would not go even so far. If the obvious danger was one

created by the activities of the stevedore, the Third Circuit would not give the part of the instruction regarding anticipation of harm despite knowledge. (*Hurst* v. *Triad Shipping Co.* (3d Cir. 1977) 554 F.2d 1237, 1249-1250, fn. 35, cert. den., 434 U.S. 861 [54 L.Ed.2d 134, 98 S.Ct. 188].) The Ninth Circuit in *Davison* v. *Pacific Inland Nav. Co., Inc.* (9th Cir. 1978) 569 F.2d 507, stated that it has not decided the question whether the "Restatement instruction" is viable in the Ninth Circuit (pp. 508-509, fn. 1), but it is clear from *Wescott* v. *Impresas Armadoras, S.A. Panama* (9th Cir. 1977) 564 F.2d 875 that the court would go no further in plaintiff's favor, if as far. The court said at page 883: "Thus, even had Impresas known of an alleged lack of proper fixtures, Brady's [the stevedore's] employees were aware of the existing condition, and chose to proceed even though they knew that the pan in the hatch creating the danger could not be controlled. Given the evidence in the record and all reasonable inferences which can be drawn from the evidence, there is no basis for placing any liability upon the shipowner herein. [Citing the *Brown* and *Anuszewski* cases]; '[T]he vessel owner owes no duty to protect or to warn the stevedoring company or its employees against dangerous conditions in their equipment arising in the course [of] performing their contractual duties on board the ship.' [Citing the *Hurst* case]."

In the principal California case interpreting federal law in this area, *Kelleher* v. *Empresa Hondurena de Vapores, S.A., supra,* 57 Cal.App.3d 52, 60, the court said: "The thrust of the federal cases construing the 1972 amendments to the [LHWCA] is thus to place the primary burden of providing a safe place and equipment for the longshoreman's work upon the stevedore company while relieving the ship and her owners of that obligation except for warning against dangerous defects which the stevedore and longshoreman cannot, with the exercise of reasonable care in light of their expertise, discover or reasonably be expected to protect against."

The conclusion we reach is that the instruction written by the trial judge is, under federal law, either correct or more favorable to the plaintiff than that to which he was entitled.

Plaintiff complains that the reference to longshoremen in the instruction is in the plural and that therefore the jury might understand the instruction to tell the jury that plaintiff is bound by the negligence of his fellow employees. We do not understand the argument; it seems to us that no reasonable reading of the instruction could lead to that interpretation.

Plaintiff also complains that the instruction informs the jury to find the vessel not negligent if the longshoreman has the ability to avoid the danger. That is a mischaracterization of the instruction. The trial court attempted to explain the concept of anticipating harm to another from an obvious danger, and said that such dangers were those "which it should reasonably anticipate that the longshoremen acting reasonably would not be able to avoid." In short, the "ability" to avoid danger is with reference to the "longshoremen acting reasonably." A better phrase than "not be able to" could have been used, or none at all would have been better.

One may be able to postulate hypothetical situations where it should be foreseen that a reasonable longshoreman dealing with an obvious danger may be hurt in ways other than his inability to avoid the danger, but none come to mind when reviewing the facts of this case. If the phrase was error, it was harmless.[1]

We turn now to the plaintiff's proposed but refused instruction regarding the "safe place to work." We note two nonsubstantive problems at the outset, either of which would justify not giving the instruction. First, the first sentence and the second sentence are contradictory. In the first sentence, the duty of the defendant is posed in terms of negligence; in the second, in terms of absolute duty. ■ The instruction is therefore ambiguous and could have been refused for that reason alone. (*Linzsey* v. *Delgado* (1966) 246 Cal.App.2d 504, 509 [54 Cal.Rptr. 762]; *Hardin* v. *Elvitsky* (1965) 232 Cal.App.2d 357, 372 [42 Cal.Rptr. 748].) In the second place, the phrase "may not escape liability" assumes that there is liability to be escaped and is argumentative. ■ Refusal of an argumentative instruction is justified. (*Estate of Clark* (1919) 180 Cal. 395, 398-399 [181 P. 639].) ■ The trial court is under no duty in a civil case to revise improper instructions. (*Royko* v. *Griffith Co.* (1957) 147 Cal.App.2d 770, 772 [306 P.2d 36]; *Stockovich* v. *Acme Spray Painters* (1954) 129 Cal.App.2d 81, 87 [276 P.2d 1].)

■ A third difficulty is even more fatal than the above; the weight of authority is that the proposed instruction is wrong on the merits. As is

---

[1] We note the comment made in *Linzsey* v. *Delgado* (1966) 246 Cal.App.2d 504, 507 [54 Cal.Rptr. 762], as follows: "As in so many instances when errors in instructions are urged upon an appellate court, the arguments become somewhat ephermeral and attempt to hinge a reversal upon a particular word or phrase. These arguments are usually not particularly persuasive when it is remembered that a trial takes place in a court room with all of its attendant tensions and urgencies. To require a nicety of expression which can be arrived at only by studious and meticulous enunciation of abstract principles might be desirable; however, under the pressure of trial such precision of diction is often difficult to attain."

made clear in the federal cases, the requirement that a vessel provide a longshoreman a "safe place to work" is a vestige of the absolute liability formerly imposed under the "seaworthy ship" doctrine, and was repealed by Congress with the 1972 amendments to LHWCA. The subject and its background was thoroughly explored by Justice Thompson in the *Kelleher* case, *supra*, at page 59: "There is not a nondelegable duty on the part of the ship or her owners to provide the longshoreman with a safe place to work, that duty having been precluded by the 1972 amendments eliminating the longshoreman's cause of action based upon unseaworthiness. (*Bess* v. *Agromar Line* (4th Cir. 1975) 518 F.2d 738, 740-742; *Ramirez* v. *Toko Kaiun K.K., supra* (N.D.Cal. 1974) 385 F.Supp. 644, 653.) Rather, the ship and her agents have a duty to refrain from active negligence, to warn or take corrective action where they know or should know of a latent dangerous condition (*Bess* v. *Agromar Line, supra* (4th Cir. 1975) 518 F.2d 738, 741) or of a patent dangerous condition which a reasonable person should anticipate as imposing an unreasonable risk of harm to one on notice of it (*Crowshaw* v. *Koninklijke Nedlloyd B.V. Rijswijk* (D.Ore. 1975) 398 F.Supp. 1224, 1230), and to have the ship in a reasonable condition for use by the stevedore company in light of its expertise. (*Hite* v. *Maritime Overseas Corporation, supra* (E.D.Tex. 1974) 380 F.Supp. 222; *Frasca* v. *Prudential-Grace Lines, Inc.* (D.Md. 1975) 394 F.Supp. 1092, 1100-1101.) Ordinarily, the ship and her owners have no duty to warn of, or remedy, a dangerous condition which is obvious or which would be obvious if ordinary care were observed by the longshoreman or his superiors in the stevedore company. (*Fedison* v. *Vessel Wislica* (E.D.La. 1974) 382 F.Supp. 4, 7-8.) The ship and her owners owe no duty to protect against dangerous conditions arising during performance of the stevedore's work. (*Hite* v. *Maritime Overseas Corporation, supra* (E.D.Tex. 1974) 380 F.Supp. 222, 227.)"

The *Kelleher* case was decided two years ago and we have examined circuit court decisions decided since to see if the law regarding a duty to provide a "safe place to work" has changed. We find, instead, that the answer given in the *Kelleher* case has been accepted, with one exception, virtually everywhere it has been raised. The excerpt quoted above from the *Wescott* case in the Ninth Circuit by clear implication excludes the concept that defendant has a duty to provide a "safe place to work." That conclusion has also been reached in the third, fourth, and fifth circuits, and in two second circuit cases that are apparently contradictory in this respect to another second circuit case holding the contrary. (*Hurst* v. *Triad Shipping Co., supra*, 554 F.2d at pp. 1247-1248; *Edmonds* v. *Compagnie Generale Transatlantique* (4th Cir. 1977) 558 F.2d 186, 190;

*Marant* v. *Farrell Lines, Inc.* (3d Cir. 1977) 550 F.2d 142, 144; *Gay* v. *Ocean Transport & Trading, Ltd., supra,* 546 F.2d at p. 1239; *Brown* v. *Ivarans Rederi A/S* (3d Cir. 1976) 545 F.2d 854, 859-860, cert. den., 430 U.S. 969 [52 L.Ed.2d 361, 97 S.Ct. 1652].) The contrary was expressed in one sentence in a second circuit case, *Napoli* v. *[Transpacific Carriers, etc.] Hellenic Lines, supra,* 536 F.2d at page 507, but its opinion in this respect apparently was silently overruled in *Munoz* v. *Flota Merchante Granco-lombiana, S.A., supra,* 553 F.2d at page 841, and in *Hickman* v. *Jugoslavenska Linijska, etc.* (2d Cir. 1978) 570 F.2d 449. The court in the *Hickman* case was express. It said (at p. 451): "The [1972] amendments [to LHWCA] abolished the doctrine of unseaworthiness, eliminated the concept of nondelegable duty to provide a safe place to work, and relieved shipowners from liability predicated upon the negligence of stevedore companies." As the cases repeatedly express, the purpose of the 1972 amendments to LHWCA was to remove from the vessel and place upon the stevedore the obligation to provide the "safe place to work," with the vessel retaining only the duty to avoid active negligence, to warn of hidden defects, and, possibly, to warn of patent defects likely to cause harm even though obvious. This concept is inconsistent with the idea that the shipowner has a duty to oversee the stevedore's primary duty to provide the "safe place to work," a duty enforced by the new workmen's compensation remedies provided by the 1972 amendments to the act. (See, e.g., *Munoz, supra,* 553 F.2d at pp. 839-841; *Marant, supra,* 550 F.2d at p. 144; *Gay, supra,* 546 F.2d at p. 1239.) Thus the more recent federal cases confirm what was said in the *Kelleher* case, *supra,* at page 60: "The thrust of the federal cases construing the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act is thus to place the primary burden of providing a safe place and equipment for the longshoreman's work upon the stevedore company while relieving the ship and her owners of that obligation except for warning against dangerous defects which the stevedore and longshoreman cannot, with the exercise of reasonable care in light of their expertise, discover or reasonably be expected to protect against."

It does not improve the argument to place the word "reasonably" in front of "safe place to work." The concept of the "safe place to work" is inherently one of absolute liability. The concept is not changed in kind, only in degree, by qualifying it.

We conclude that the trial judge did not err, for the three reasons set forth, in rejecting plaintiff's proposed "safe place to work" instruction.

Plaintiff complains of failure to give his requested instruction No. 7, which reads:

"Where the danger to the plaintiff longshoreman is unreasonable, the obviousness of the danger does not alone relieve a defendant shipowner of responsibility for the danger. While the plaintiff longshoreman may be under a duty to avoid harm likely to result to him from open and obvious dangers, he may not be in a position fully to appreciate the risk or to avoid the danger even though aware of it. For instance, his attention may be distracted, or his duties as an employee may require his unavoidable exposure to it.

"The place of danger may be the only place plaintiff could carry out his duties, or the only alternatives would be to leave his job or face trouble for delaying the work.

"In such circumstances, the shipowner is the person best able to prevent harm to the plaintiff and his failure to do so constitutes negligence."

It will immediately be seen that the first two paragraphs of the proposed instruction are merely a paraphrase, in argumentative form, of the trial court's instruction on the duty of the vessel. The third paragraph is an incorrect statement of the law, as it attempts to assign to the vessel duties which LHWCA assigns to the stevedore, as discussed above.

Plaintiff complains of the giving of defendant's proposed instruction No. 6, which reads: "In the allocation of duties between the shipowner and the plaintiff's employer, the stevedoring company, it is assumed that the stevedoring company as an independent contractor is expert and experienced in the work of loading and unloading cargo. The stevedoring company is assumed to be aware of the risks and hazards which are normally to be found on a vessel arriving at a port after being at sea, as a result of being subject to the elements. . . . The stevedoring company is expected and obligated to load or unload cargo and perform all the related functions safely, properly and in a workmanlike manner in accordance with the skill and knowledge above referred to as being required of the stevedoring company. . . ."

The instruction is not an incorrect statement of the law. The court in the *Kelleher* case, *supra,* said at pages 59-60: "The primary responsibility for the safety of the longshoreman lies with the stevedoring company

because it is in the position best to provide for the safe unloading of a ship. (*Ramirez* v. *Toko Kaiun K.K., supra* (N.D.Cal. 1974) 385 F.Supp. 644, 653.) '[It is] within the expertise of the stevedore and among its responsibilities as an independent contractor to conduct the loading [or unloading] operations in a safe manner. This necessarily include[s] the obligation to discover and remedy dangerous conditions in the stow . . . .' (*Fedison* v. *Vessel Wislica, supra* (E.D.La. 1974) 382 F.Supp. 4, 8.) The ship and its owners are under no obligation to provide equipment which will make the loading or unloading safe. (*Bess* v. *Agromar Line, supra* (4th Cir. 1975) 518 F.2d 738, 742.) They reasonably may rely upon the expertise of the stevedore and longshoremen to recognize patent dangerous conditions and to protect against the danger. (*Anuszewski* v. *Dynamic Mariners Corp. Panama* (D.Md. 1975) 391 F.Supp. 1143, 1146; cf. *Crowshaw* v. *Koninklijke Nedlloyd B.V. Rijswijk, supra* (D.Ore. 1975) 398 F.Supp. 1224, where vessel's agents participate in loading or unloading.)" Nevertheless, we think that the instruction would have been better left ungiven. It was not necessary for the jury to have a discursive lecture on the respective responsibilities of the stevedore and the vessel. The duty of the vessel was correctly, as held above, given the jury. To explain also the duties of the stevedore raises the possibility of causing the jury to focus on the question of liability of a nonparty instead of the party. However, the giving of the instruction cannot be rated a prejudicial error even if it can be said to have been better not given, since it correctly states the law and there is no reason to believe that the jury was misled by it.

Plaintiff complains of failure to give his requested instruction No. 3, which read: "If a shipowner, such as the defendant GOLDSTONE SHIPPING CORPORATION, was negligent and its negligence was a proximate cause of injury to the plaintiff, the shipowner is liable for all damages proximately caused by the defendant (subject only to reduction for the plaintiff's contributory negligence, if any) although the shipowner's negligence was not the sole proximate cause of the injury and although the negligence of the plaintiff's fellow employees may have contributed in equal, greater or lesser degree, in causing the injury to the plaintiff." The trial court gave, instead, BAJI Nos. 3.00, 3.50, and 14.93 which collectively covered the area. BAJI No. 3.00 told the jury to reach a plaintiff's verdict if plaintiff ". . . was injured as a proximate result of some negligent conduct on the part of a defendant." BAJI No. 3.50 told the jury that they should reduce any verdict by the percentage of negligence, if any, that they attributed to the plaintiff. BAJI No. 14.93 told the jury that they should consider that the negligence of the plaintiff and of the defendant totaled 100 percent of the negligence, and instructed the jury to apportion the negligence

between the plaintiff and the defendant. Thus, it is apparent that there is no room for concern that the jury was left at sea on how to consider any negligence of plaintiff's fellow employees. In addition, the jury brought in a defense verdict in the face of BAJI 3.00, showing that it found defendant not negligent. While the substance of plaintiff's requested instruction No. 3 would have been proper to give with some judicious rewriting, it cannot be said that the jury was not fully instructed. Plaintiff complains that he was entitled to "the admiralty rule of comparative negligence" and not that of the common law. He is, of course, correct, but has failed to point out how the instructions given differed from "the admiralty rule." We see no difference.

Plaintiff also complains that the trial court did not give his proposed instruction No. 4, which read: "A shipowner cannot escape liability for its negligent conduct by claiming the longshoreman continued to work when the longshoreman knew, or in the exercise of reasonable care, should have known of the dangerous condition of its cargo. A longshoreman never assumes the risk of defendant shipowner's negligence, if any."

Aside from the argumentative character of the phrase "cannot escape liability," which alone is sufficient cause to reject the instruction (see discussion, *ante,* p. 706), the instruction is pure surplusage. Nothing in the case calls for it to be given. Defendant neither pleaded nor argued assumption of the risk as a defense and plaintiff does not point out anything in the record which makes it necessary to instruct that a nonraised, nonexistent defense is to be disregarded. Assumption of the risk plays no part in this case, no one suggested that it did, and no reason to instruct on it appears. (*Pyles* v. *American Trading & Production Corporation* (5th Cir. 1967) 372 F.2d 611, 614-615.)

Plaintiff's arguments on appeal show that he and his counsel are not reconciled to the new order of things brought on by the 1972 amendments to LHWCA. An obviously slippery condition of the deck caused by water or brine which affects the operation of unloading the barrels is just the type of hazard the act contemplates is to be taken care of by the stevedore, not the ship. It appears to us that a plaintiff's verdict in this case would be difficult to uphold even giving plaintiff the advantage of the substantial evidence rule. In any event, if expert "nit-nicking" could find minor errors in the instructions given, reversal of the judgment would not be warranted on that ground because it is not reasonably probable that a result more favorable to plaintiff would have been

reached in the absence of such errors. (See Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836-837 [299 P.2d 243].)

The judgment is affirmed.

Kingsley, Acting P. J., and Jefferson (Bernard), J., concurred.