Hubert M. FEDISON

v.

The **VESSEL WISLICA,** her engines,
tackle, furniture & apparel and Polish
Ocean Lines.

Civ. A. No. 73–1030.

United States District Court,
E. D. Louisiana.

July 24, 1974.

John J. Jackson, III, Jackson & Stovall, New Orleans, La., for plaintiff.

J. Dwight LeBlanc, Jr., Robert B. Fisher, Jr., Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for defendants.

George W. Healy, III, Thomas J. Wagner, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for intervenor Employers National Ins. Co.

HEEBE, Chief Judge:

Plaintiff, a longshoreman, was injured aboard the defendant's vessel, the WISLICA, while attempting to roll and stow a 600-pound bale of cotton. Suit was filed under the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b). The pertinent provisions of the amendments provide that longshoremen covered by the Act, such as the plaintiff, may only recover damages against a vessel when caused by the vessel's negligence. Any liability based upon the warranty of seaworthiness, or a breach thereof, is expressly abolished by the amendments. The case was tried to the Court on the issue of liability only. Since we conclude that the plaintiff has not carried his burden of proving that the negligence of the vessel caused his injuries, we find for the defendant.

## FINDINGS OF FACT

1. On December 7, 1972, the plaintiff, Hubert M. Fedison, was injured in New Orleans on the vessel WISLICA, owned by the defendant, Polish Ocean Lines, when he fell into a crevice or gap between cargo crates on top of which he was attempting to roll and stow a 600-pound bale of cotton.

2. At the time of his injury, the plaintiff was working as a longshoreman for Louisiana Stevedore, Inc., which had been hired by the WISLICA to load cargo and which controlled and supervised the loading operations in which the plaintiff was involved when injured.

3. The cargo crates had been loaded in Houston approximately a week before the accident in question.

4. It is not unusual for there to be gaps, holes, cracks or crevices between crates in the stow. When such a condition makes it dangerous for the longshoremen to work in the stow, they are expected to request dunnage from their supervisors, such as a foreman or derricksman, who are employed by the stevedoring company.

5. On the WISLICA, these supervisory personnel had to obtain authority from the vessel's mate to use the dunnage available aboard ·the vessel. If new dunnage were needed, the vessel's duty officer had to agree on the amount and kind, and sign an order for it.

6. The most important fact the plaintiff attempted to prove was that the plaintiff's supervisors, Charlie Angelone, (his foreman), and Leroy Brady, (the derricksman), had asked the appropriate ship's officer for dunnage, and that this request had been denied. However, we find the evidence as to this fact to be inconclusive. The plaintiff testified that the vessel's personnel refused them dunnage, but his trial testimony was, in certain respects, inconsistent with his deposition testimony. Other of the plaintiff's witnesses testified that they heard Angelone request dunnage of the vessel's personnel, which request was denied, but Angelone later testified that he made no such request. In fact, according to Angelone, the longshoremen did not ask him for dunnage until after the plaintiff was injured. Brady said a bearded officer refused him dunnage but the testimony of other witnesses indicated that none of the ship's officers had beards. The evidence simply does not preponderate that either Charlie Angelone or Leroy Brady ever requested dunnage from the appropriate personnel ·of the WISLICA prior to the plaintiff's accident.

7. The vessel had no notice of the dangerous condition of the stow until after the plaintiff's injury.

## CONCLUSIONS OF LAW

 1. The plaintiff seeks to hold the vessel liable for the condition of the stow, alleging that the defendant breached its duty to provide him with a safe place to work. By this argument, however, the plaintiff seeks to circumvent the expressed intent of the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), to abolish actions by longshoremen against the vessel based upon a breach of warranty of seaworthiness. To be sure, the imperfections in the stowage of the WISLICA may have been sufficient to have rendered the vessel unseaworthy. But the facts of this case fail to show that the vessel acted negligently with respect to the conditions in the hold. The duty to discover and remedy a dangerous condition caused by the holes and cracks which often develop between crates in the stow was clearly one of the responsibilities of the stevedore, Louisiana Stevedores, Inc., which had control over the work being done in the hold. The vessel is not negligent for the breach of a duty owed by the stevedore.

2. The plaintiff failed to prove by a preponderance of the evidence that his supervisors requested dunnage from any of the vessel's officers. It necessarily follows that the vessel did not negligently fail to provide the longshoremen with dunnage.

3. Since the plaintiff has failed to prove that his injuries were caused by the negligence of the vessel, it is the order of the Court that judgment be entered for the defendant dismissing the plaintiff's suit with interest and costs.

## SUPPLEMENTAL MEMORANDUM OPINION

The plaintiff, Hubert M. Fedison, has filed a motion for a new trial or to amend our findings of fact and conclusions of law. The only issue raised by this motion requiring any discussion concerns this Court's interpretation of the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, specifically 33 U.S.C. § 905(b). In effect, the plaintiff argues that we erred in not applying maritime negligence concepts to the case at bar. Thus, Fedison contends that we ought to have made a finding that the vessel should have known of the dangerous condition of the stow and was hence negligent for failing to warn the plaintiff of this hazard or to remedy the dangerous condition. This negligence theory is based upon the nondelegable maritime duty of a vessel to provide those working aboard her with a reasonably safe place to work.

 A review of the Senate [1] and House [2] Committee Reports makes it readily apparent that Congress intended land-based principles of negligence to control in an action brought under 33 U.S.C. § 905(b) by a longshoreman against the vessel. The reports contain the following expressions of Congressional intent:

> Accordingly, the Committee has concluded that, given the improvement in compensation benefits which this bill would provide, it would be fairer to all concerned and fully consistent with the objective of protecting the health and safety of employees who work on board vessels for the liability of vessels as third parties to be predicated on negligence, rather than the no-fault concept of seaworthiness. *This would place vessels in the same position, insofar as third party liability is concerned, as land-based third parties in non-maritime pursuits.*

> The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be in if he were injured in non-mari-

---

1. Senate Report (Labor and Public Welfare Committee) No. 92–1125.

2. House Report (Education and Labor Committee) No. 92–1441.

time employment ashore, insofar as bringing a third party damage action is concerned, and *not to endow him with any special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called, such as "unseaworthiness", "nondelegable duty", or the like.*

Persons to whom compensation is payable under the Act retain the right to recover damages for negligence against the vessel, but under these amendments they cannot bring a damage action under the judicially-enacted doctrine of unseaworthiness. Thus a vessel shall not be liable in damages for acts or omissions of stevedores or employees of stevedores subject to this Act, Crumedy vs. The J. H. Fisser, 358 U.S. 423 [79 S.Ct. 445, 3 L.Ed.2d 413], Albanese vs. Matts, 382 U.S. 283 [86 S.Ct. 429, 15 L.Ed.2d 327], Skibinski vs. Waterman SS Corp. [2 Cir.], 330 [360] F.2d 539; for the manner or method in which stevedores or employees of stevedores subject to this Act perform their work, A.N.G. Stevedores vs. Ellerman Lines, 369 U.S. 355 [82 S.Ct. 780, 7 L.Ed.2d 798], Blassingill vs. Waterman SS Corp., [9 Cir.], 336 F.2d 367.

\* \* \* \* \* \*

The Committee intends that on the one hand an employee injured on board a vessel shall be in no less favorable position vis a vis his rights against the vessel as a third party than is an employee who is injured on land, and on the other hand, *that the vessel shall not be liable as a third party unless it is proven to have acted or have failed to act in a negligent manner such as would render a land-based third party in non-maritime pur-*

*suits liable under similar circumstances.*[3] (emphasis added)

It thus seems clear to the Court that Congress intended that the nature and extent of the duties owed by a vessel to a longshoreman, pursuant to 33 U.S.C. § 905(b), are to be determined in accordance with land-based principles of negligence.[4] We are next faced with the question of which body of negligence law to apply in a situation such as presented in the case at bar. The House Report again provides us with language indicating the clear intent of the amendment:

Finally, the Committee does not intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions of the law shall be determined as a matter of Federal law.[5]

Courts faced with legal questions under this amendment must therefore strive to fashion a uniform body of law based upon general land-based principles of negligence. There is no doubt that the stevedore which employed the plaintiff was an independent contractor hired by the vessel to load cargo. The plaintiff was therefore a business invitee of the vessel. It is black-letter law that the owner of a premise owes no duty to warn an invitee of a defect or danger which is known to him or which is as well known to the invitee as to the owner, or which is obvious or which should be observed by the invitee in the exercise of ordinary care.[6]

Turning to the facts of the case at bar, we found that the vessel had

---

3. 3 U.S.Code Cong. & Admin.News 1972, pp. 4703–4704.

4. We note, however, that Congress did not intent that all maritime principles be abolished. The committee reports make it clear that in actions brought under this section, the admiralty doctrine of comparative negligence shall apply in addition to the admiralty rule precluding the defense of as-

sumption of the risk. See 3 U.S.Code Cong. & Admin.News 1972, p. 4705.

5. 3 U.S.Code Cong. & Admin.News 1972, p. 4705.

6. See 65 C.J.S. Negligence, § 63(53); *see also*, Hayes Hite v. Maritime Overseas Corporation, 380 F.Supp. 222 (E.D.Tex.1974), and cases compiled in that opinion at footnote 9.

no actual knowledge of the particular hole into which the plaintiff fell. Though the vessel's crew was aware that such holes were apt to develop in the type of cargo involved, that sort of constructive knowledge imposed no duty upon the vessel to remedy such defects or warn the longshoremen of them. This conclusion is in full accordance with the principles discussed above. The hole which Fedison fell into was precisely the kind of defect which certainly could have been readily observed by the plaintiff or his immediate superiors in the exercise of ordinary care. Moreover, it was obviously within the expertise of the stevedore and among its responsibilities as an independent contractor to conduct the loading operations in ` a safe manner. This necessarily included the obligation to discover and remedy dangerous conditions in the stow such as the hole which caused the plaintiff's injury.

The plaintiff's motion for a new trial is, therefore, hereby denied.