[Civ. No. 45306. Second Dist.. Div. Five. Jan. 19. 1976.]

INMAN R. JOHNSON, Plaintiff and Appellant, v.
CANADIAN TRANSPORT COMPANY, LTD.,
Defendant and Respondent.

COUNSEL

Margolis, McTernan, Scope & Sacks and John T. McTernan for Plaintiff and Appellant.

Graham & James and Thomas A. Vyse for Defendant and Respondent.

OPINION

**LORING, J.**\*—Inman R. Johnson (Johnson) filed a complaint against Canadian Transport Company, Ltd., a corporation (Canadian),[1] Towmotor Corporation, a corporation (Towmotor), Caterpillar Tractor Company, a corporation (Caterpillar), and the Weatherhead Company, a corporation (Weatherhead). The first cause of action against the defen-

---

\*Assigned by Chairman of the Judicial Council.

[1] We substitute the name under which defendant answered.

dants and "each of them" alleged that on December 15, 1972, Johnson was employed as a longshoreman by Marine Terminals Corporation; that Canadian was the owner of a certain merchant vessel named *Nanoose Carrier;* that the defendants and each of them "so negligently maintained, controlled, inspected, operated and supervised said vessel, its gear, equipment and cargo, and negligently failed to provide [Johnson] with a safe place to work and negligently provided [Johnson] with defective and unsafe equipment with which to work, so that he was caused to be sprayed in the face with hydraulic oil and to slip and fall and to sustain injuries" which occurred when Johnson was working at Berth 54, Long Beach Harbor. The complaint described the injuries and alleged damage in the sum of $250,000. The second, third and fourth causes of action against the defendants (not including Canadian) were on the theory of negligence, strict liability, express warranty and implied warranty.[2]

Canadian answered and filed a motion for summary judgment on the ground "that this particular defendant [Canadian] has no liability to plaintiff [Johnson] herein." The points and authorities filed by Canadian in support of its motion indicate that the basis therefor was that as a matter of law the 1972 amendments to the "Longshoremen's and Harbor Workers' Compensation Act" 33 United States Code sections 901-950 (hereafter "Act") relieved Canadian (as a "Vessel") from such liability. The motion was opposed by declarations filed by John T. McTernan, Chet Groves and Martin J. Siegel (referred to in detail *infra*). The points and authorities submitted in opposition to the motion indicate that Johnson asserted that he did have a meritorious cause of action against Canadian arising out of the negligence of Canadian notwithstanding the 1972 amendments to the Act.

The court granted Canadian's motion for summary judgment reciting that the declarations and points and authorities in support of the motion show there is no merit to the case and the declarations in opposition "present no triable issue of fact." Johnson's motion to reconsider on the ground that the motion was premature since he had not yet completed discovery, was denied. Johnson appeals from the judgment.

---

[2]Since Towmotor, Caterpillar and Weatherhead were not parties to the motion for summary judgment and are not parties to this appeal, we will hereafter treat the case as involving a single cause of action against Canadian alone on the theory of negligence.

## CONTENTIONS

Appellant contends:

1. Nonmaritime law applies in this case because this is a shoreside accident caused by defective shore-based equipment owned and operated by Stevedore.

2. Under nonmaritime law there are triable issues as to whether plaintiff's accident resulted from peculiar risks of the work which defendant should have recognized as requiring special precautions:

(a) Stevedore was the independent contractor of defendant and the work in progress at the time plaintiff was injured was being done pursuant to that contract.

(b) Plaintiff was admittedly an employee of the independent contractor and, as a matter of law, was entitled to the protection of sections 413 and 416. (Rest.2d Torts)

(c) There were triable issues as to whether the presence of the unguarded and unshielded hydraulic hoses, a short distance from the operator's face, constituted a "peculiar risk" calling for "special precautions" all within the meaning of sections 413 and 416.

(d) There were triable issues as to the selection of the hydraulic hose used in lift 70-320.

(e) There were triable issues as to whether the presence of the uncovered clutch linkage above the floorboard of the lift and close to the transmission housing constituted a "peculiar risk" calling for "special precautions" all within the meaning of sections 413 and 416.

(f) There were triable issues as to whether defendant had the requisite knowledge of the "peculiar risks" and the need for "special precautions" against them.

(g) Upon the foregoing there was a litigable issue of defendant's liability to plaintiff under the principles of sections 413 and 416.

3. The 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act require the application of nonmaritime law,

including the principles of sections 413 and 416, to this accident irrespective of the effect of *Victory Carriers, Inc. v. Law*, 404 U.S. 202 [30 L.Ed.2d 383, 92 S.Ct. 418].

4. The trial court erred in acting on the motion for summary judgment before plaintiff's discovery was complete.

## FACTS

It was alleged in the declarations filed by Johnson in opposition to the motion for summary judgment that answers to interrogatories on file in the action established that at the time of the accident (Dec. 15, 1972) Canadian had entered into a contract with Marine Terminals Corporation ("Stevedore") to perform stevedore services in unloading rolled paper cargoes at Los Angeles/Long Beach Harbor; that Canadian had made approximately 138 voyages carrying rolled paper cargoes which Stevedore unloaded under the contract; that the cargoes were unloaded by a self-propelled "squeeze lift";[3] that the squeeze lift moved rolled paper cargoes (usually two rolls at a time) from vessel side to warehouse; that this equipment was first used in 1946 or 1947 and had been continuously used to date; that Canadian knew "throughout the years" that the squeeze lifts were equipped with hydraulic lines; that in 1966 Canadian made inquiries of Stevedore "concerning the safety precautions, devices and practices" observed by Stevedore in the operation and maintenance of the squeeze lift equipment; that at the time of the accident, Canadian had no information concerning the safety precautions, devices and practices observed by Stevedore; that Canadian "had done nothing at all to determine whether the placement of hydraulic hoses . . . presented risks of harm to the operator of the squeeze lifts," whether the manner of use and operation created risk of wear or damage to the hydraulic hoses, what maintenance procedures were observed by Stevedore or what safety precautions were required to insure the safety of the operator; that since 1966 Canadian stationed a superintendent or supervisor in the harbor who inspected equipment and reported defects to Stevedore; that Canadian knew that the squeeze lift had exposed linkage rods or cable above the floor boards but did nothing to determine if such conditions presented risks of harm to the operator or practices could be instituted to protect the operator; that on December 15, 1972, Johnson was employed by Stevedore to operate a squeeze lift to unload rolled paper cargo from an apron suspended from the vessel's

[3] Photographs attached indicate that a squeeze lift is somewhat similar to a conventional fork lift.

side and place it in the warehouse; that Johnson was at all times on the dock and not on the vessel. As Johnson was attempting to pick up two rolls of paper from the apron, a hydraulic hose leaked fluid which struck Johnson in the face and as he attempted to get out of the squeeze lift, his foot caught in the exposed clutch linkage and he fell out of the squeeze lift onto the dock sustaining the injuries complained of. Other affidavits submitted by Johnson in opposition to the motion for summary judgment dealt with the technical aspects of the rupture of the hydraulic hose and the allegedly defective design and operation of the hose and the exposed clutch linkage.

Johnson contends that there is an issue of fact which requires trial—did Canadian have a duty of due care to Johnson, and if so, did Canadian violate that duty? Johnson relies on principles expressed in sections 413 and 416 of the Restatement Second of the Law of Torts. Canadian contends that under the 1972 amendments of the Act and particularly section 905, it has no liability to Johnson whatsoever because Johnson was a stevedore and the injuries were caused by other stevedores.

## DISCUSSION

Since this appeal involves a summary judgment, we first address ourselves to some elemental principles which govern such a proceeding. Those principles are briefly summarized as follows: "A study of the cases reveals too great optimism on the part of moving parties. The appellate courts have not, on the whole, been favorably inclined to the use of this 'drastic' remedy which deprives a party whose pleading is sufficient of the right to a trial on the issues raised thereby. The remedy is designed to terminate an action promptly where the purported cause of action or defense is sham or otherwise wholly unfounded. But it is futile to seek the order where any basis for a cause of action or defense can be shown. In other words, the moving party should not confuse an opponent's *weak* case with *no case at all.* The court, construing the moving party's affidavits strictly (supra, § 181) and the counteraffidavits liberally (supra, § 191), will reverse the summary judgment if any kind of case is shown." (4 Witkin, Cal. Procedure (2d ed. 1971) § 199, p. 2844.)

██ Johnson claims that he has a common law cause of action against Canadian for negligence and that that cause of action was not outlawed by the 1972 amendments of the Act.

█ Assuming (without deciding) that Johnson's affidavits, in opposition to the motion for summary judgment, were weak and unpersuasive, that conclusion would not sustain the summary judgment *since at this stage* the affidavits were only required to show that there was some kind of a case, which, if true, would legally justify recovery. The affidavits were only required to show the *existence* of an issue of fact. They were not required to persuade the trier of fact as to the proper disposition of that issue.

█ It is clear that Johnson was proceeding on the theory that the rolled paper cargo was being unloaded from the vessel for the benefit of Canadian; that it had the legal duty to make certain that the equipment used was safe and in sound operable condition and that it negligently violated that duty. It is also clear that Johnson contended that whether or not Canadian had that legal duty generally or in isolated instances, that in this case, by virtue of the long history of relationship between Canadian and Marine Terminal (138 Voyages) Canadian, by posting a supervisor or superintendent on the dock and otherwise had assumed that duty. Johnson contends that under California law, Canadian could not delegate that duty to an independent contractor since it was a nondelegable duty of care because the operation involved "peculiar risks" calling for "special precautions." Johnson relies on such cases as *Walker* v. *Capistrano Saddle Club*, 12 Cal.App.3d 894 [90 Cal.Rptr. 912]; *Van Arsdale* v. *Hollinger*, 68 Cal.2d 245 [66 Cal.Rptr. 20, 437 P.2d 508]; *Ferrel* v. *Safway Steel Scaffolds*, 57 Cal.2d 651 [21 Cal.Rptr. 575, 371 P.2d 311]; *Woolen* v. *Aerojet General Corp.*, 57 Cal.2d 407 [20 Cal.Rptr. 20, 369 P.2d 708] and *McDonald* v. *City of Oakland*, 233 Cal.App.2d 672 [43 Cal.Rptr. 799]. Johnson also relies on sections 413 and 416 of the Restatement of the Law of Torts.[4] Johnson argues that the United States Supreme Court held in *Victory Carriers, Inc.* v. *Law*, 404 U.S. 202 [30 L.Ed.2d 383, 92 S.Ct. 418], that the admiralty jurisdiction of the United

---

[4] Restatement Second of the Law of Torts sections 413 and 416 read as follows:
.  "§ 413. One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

"(a) fails to provide in the contract that the contractor shall take such precautions, or

"(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

"§ 416: One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

States did not extend to pierside accidents involving longshoremen using pier based equipment. He argues that if the admiralty jurisdiction of the United States does not extend to such an accident, state law must of necessity do so.

Canadian replies that although Johnson's argument might be true generally speaking, that the 1972 amendments of the Act either expressly relieved Canadian of all liability for such an alleged cause of action or so called "federal common law" principles apply.

We therefore address ourselves to the 1972 amendments of the Act. The critical section is section 905.[5] Canadian concedes that "The particular language which is relevant to this appeal is found at § 5(b):

" 'In the event of injury to a person covered under this Act caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 33 of this Act, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing

---

[5]Section 905 of the Act (33 U.S.C. § 905 et seq.) reads:

"(a) The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.

"(b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this Act.' "

At oral argument both sides conceded that the sentence: "If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel" has no application to this case because Johnson was not employed by Canadian. (See *Standard Fruit Co.* v. *Metropolitan Stevedore Co.*, 52 Cal.App.3d 305 [125 Cal.Rptr. 111].)

Since this appears to be a case of first impression under this factual concept and the meaning of the act does not appear to have been interpreted by any federal court we turn to the congressional committee reports regarding the 1972 amendments of the Act to determine what Congress intended to accomplish. Senate Report No. 92-1125 reads in part as follows: "The principle purpose of S.2318 is to amend the Longshoremen's and Harbor Workers' Compensation Act in order to upgrade the benefits, extend coverage to protect additional workers, *provide a specified cause of action for damages against third parties,* and to promulgate necessary administrative reforms.

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"*The bill also expands the coverage of this Act to cover injuries occurring in the contiguous dock area related to longshore and ship repair work.*

"*The bill also resolves the longstanding dispute over third-party actions by injured longshoremen by providing that such actions may be brought against vessels on the basis of negligence, but the remedy based on unseaworthiness is eliminated.* In addition, indemnity actions against stevedoring companies are prohibited. Agreements between stevedoring companies and vessels to indemnify the latter are prohibited.

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"Since 1946, due to a number of decisions by the U.S. Supreme Court, it has been possible for an injured longshoreman to avail himself of the benefits of the Longshoremen's and Harbor Workers' Compensation Act and to sue the owner of the ship on which he was working for damages as a result of his injury. The Supreme Court has ruled that such ship owner, under the doctrine of seaworthiness, was liable for damages caused by any injury regardless of fault. In addition, shipping companies generally have succeeded in recovering the damages for which they are held liable to injured longshoremen from the stevedore on theories of express or implied warranty, thereby transferring their liability to the stevedore company, the actual employer of the longshoremen.

". . . . . . . . . . . . . . . . . . . . . . .

"The bill reported by the committee meets these objections *by specifically eliminating suits against vessels brought for injuries to longshoremen under the doctrine of seaworthiness* and outlawing indemnification actions and 'hold harmless' or indemnify agreements. *It continues to allow suits against vessels or other third parties for negligence.* At the same time it raises benefits to a level commensurate with present day salaries and with the needs of injured workers whose sole support will be payments under the Act." (Italics ours.)

In view of the legislative purposes outlined in the foregoing report, we conclude that the sentence in section 905 of the Act which reads: "In the event of injury to a person covered under this Act caused by the negligence of a vessel, then such person . . . may bring an action against such vessel as a third party . . . and the employer shall not be liable to the vessel for such damages directly or indirectly . . . " was intended to outlaw those causes of action against the vessel which were predicated on the admiralty concept of unseaworthiness of the vessel (liability without fault) and that such language was not intended to outlaw causes of action against the vessel predicated on common law principles of the independent negligence of the vessel.[6] Canadian virtually concedes this interpretation when it argues: "Congress has intended, and the 'New' Act prescribes, a uniform Federal standard of care *based on common law concepts of negligence.*" (Italics ours.) It is true that the committee report provides: " 'Finally this committee does not intend that the negligence

---

[6]We use the word "vessel" only because both counsel and the statute do. Technically under California law the action is not against the "vessel", as would be the case in admiralty. Under California law the action would normally be against the entity who owned or operated the vessel and owed the duty.

remedy authorized in the bill shall be applied differently in different ports depending upon the law of the state in which the port may be located. The committee intends that legal questions which may arise in actions brought under these provisions of the law shall be determined as a matter of Federal law.' S 2318, p. 12." This statement indicates a desire and intention on the part of the committee merely to develop *uniform* principles of common law. Of course, the most widely accepted statement of existing common law principles is contained in the Restatement of the Law of Torts. An adherence to such principles would not destroy the desired uniformity. The vice in Canadian's position is the implied assumption that sections 413 and 416 of the Restatement of the Law of Torts do not express commonly accepted principles of common law negligence. The Restatement is not a legislative enactment of new law. It is merely what it professes to be, a restatement of existing principles which were adhered to at common law long before the restatement assembled and restated them. Canadian cites us to no federal case which holds that sections 413 and 416 do not apply as a part of the common law of negligence under the "new" act. Sections 413 and 416 are not a statement of legal principles unique to California or any other particular state, but are statements of common law principles recognized generally.

In other situations the United States Supreme Court has held that statutes should be liberally construed to preserve the common law rights of workmen unless such an interpretation would render the statutory provisions nugatory. (See *Isbrandtsen Co.* v. *Johnson*, 343 U.S. 779, 782 [96 L.Ed. 1294, 1298, 72 S.Ct. 1011]; *Texas and Pacific Railway* v. *Abilene Cotton Oil Co.*, 204 U.S. 426, 437 [51 L.Ed. 553, 557-558, 27 S.Ct. 350].) Our interpretation does not render section 905 of the Act nugatory.

We conclude that the quoted language of section 905 of the Act was intended to relieve vessels of liability to stevedores for damage under the admiralty doctrine of unseaworthiness (liability without fault) and of liability to stevedores employed directly by the vessel for damage caused by the negligence of other stevedores, but that such 1972 amendments to the Act were not intended to relieve vessels of liability to stevedores employed by independent contractors for damages proximately caused by the vessel's own negligence as that negligence is defined and expressed by principles of the common law including, but not limited to the principles enunciated in sections 413 and 416 of the Restatement of the Law of Torts.

We conclude therefore that the 1972 amendments to the Act did not relieve Canadian of liability to Johnson for its own negligence even though Johnson's damage may also have been caused in part by the negligence of his employer.

In a supplemental brief Canadian directs our attention to *Holman* v. *State of California* ▮(Cal.App.) which it claims bars Johnson from recovery herein as a matter of law. We do not agree. In the case at bar, unlike *Holman,* Johnson was engaged in operating the defective equipment at the time of the injury and the affidavit alleged some measure of control by Canadian over the defective equipment. Those allegations raised issues of fact which required trial and which take the case out of the principles enunciated in *McDonald* v. *Shell Oil Co.*, 44 Cal.2d 785 [285 P.2d 902].

We conclude that Johnson's affidavits in opposition to Canadian's motion for summary judgment demonstrated that there were fact issues regarding Canadian's negligence which required trial and that Johnson's rights should not have been disposed of summarily.

In view of these conclusions, it is not necessary to determine Johnson's claim that the court abused its discretion by hearing the motion for summary judgment before Johnson had completed discovery.

We express no opinion on the relative merits of the substantive claims of the respective parties.

The judgment is reversed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied February 10, 1976, and respondent's petition for a hearing by the Supreme Court was denied March 31, 1976.