[Civ. No. 46872. Second Dist., Div. One. Apr. 5, 1976.]

GARY C. KELLEHER, Plaintiff and Appellant, v.
EMPRESA HONDURENA de VAPORES, S.A., Defendant and
Respondent.

54

---

**COUNSEL**

Magana, Cathcart & Pierry, Charles D. Sneathern and Michael D. Moorhead for Plaintiff and Appellant.

Lillick McHose & Charles and Michael D. Dempsey for Defendant and Respondent.

---

**OPINION**

**THOMPSON, J.**—This is an appeal from a summary judgment against plaintiff longshoreman seeking damages for negligence of defendant shipping company, owner of the ship upon which he was working when

injured. It involves the standard of negligence applicable to actions based upon the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act. (33 U.S.C. §§ 903-905.) Concluding that the standard is one established by federal rather than state law but that defendant's declarations do not rebut all the elements of liability under even the strict federal test of maritime negligence, we reverse the judgment. We remand the matter to the trial court so that it may consider the propriety of a partial summary judgment limiting the issues at trial.

Plaintiff's complaint alleges that on September 27, 1973, while acting as a longshoreman employed by the Metropolitan Stevedore Company, he was assisting the unloading of a vessel owned by defendant shipping company. The complaint states that defendant breached its duty to provide plaintiff with a safe place to work and negligently maintained the vessel, causing a box to crush and injure plaintiff by in turn causing his leg to give way and his back to twist.

Plaintiff's answers to interrogatories served upon him by defendant refine the allegations of the complaint. The answers establish that plaintiff bases his contention of negligence upon: (1) conduct of defendant in "shipping and storing" banana boxes in such a manner that they could be unloaded only in a way which defendant could reasonably foresee would result in an unreasonable risk of harm to those required to handle the cargo; (2) imposition upon plaintiff of an unsafe work method requiring performance upon boxes unsafe for the purpose for which they were constructed; and (3) the proposition that the banana boxes were poorly constructed and not designed for the purpose intended so that they collapsed upon use.

Defendant moved for summary judgment. Its motion is supported by the declaration of a longshoreman, a coworker of plaintiff, and a declaration of defendant's trial counsel incorporating plaintiff's answers to questions at a deposition. Plaintiff filed counter declarations. The following factual framework emerges from an analysis which construes the counterdeclarations liberally and accepts their content as true (*Orser v. George* (1967) 252 Cal.App.2d 660, 669 [60 Cal.Rptr. 708]) while construing the supporting declarations strictly and accepting as fact only that portion of their content that is not countered by a declaration in opposition to the motion (*Harding v. Purtle* (1969) 275 Cal.App.2d 396, 399 [79 Cal.Rptr. 772]).

On September 27, 1973, plaintiff was working in the employ of a stevedore company, an independent contractor. He was a member of a longshoreman work gang unloading cartons of bananas from the vessel *Tilapa* owned by defendant. Generally, ship personnel do not supervise the unloading of bananas, and no ship personnel were present in the hatch with the work gang. Plaintiff received all of his orders from either the hatch boss or the ship boss, both of whom were employees of the stevedore company.

*Tilapa* carried a cargo of bananas destined both for Los Angeles and San Francisco. While the Los Angeles cargo was unloaded first, it was stowed intermixed with the San Francisco cargo in eight high stacks of cardboard banana boxes so that it was necessary to "break down" the stacks to remove the boxes destined for Los Angeles and restack the boxes three high to stow them safely for the voyage to San Francisco. Plaintiff was assigned by the ship boss as "middle man" of a three man crew breaking down stacks. The "top man" of the crew removed a carton from the top of an eight-box tier, passed it to plaintiff, who in turn passed it to a "bottom man" who placed it in a three-tier stack. The process forced the top man and plaintiff to stand on the banana boxes in order to reach those at the top of the tier being broken down.

*Tilapa* had carried banana cargo packed in the cardboard boxes on several occasions. One of the first things a longshoreman is normally told by his supervisor is not to stand on the boxes of bananas. The supervisors employed a standard safety procedure of warning their gangs against that procedure. Despite that policy, it was a common practice of longshoremen to stand on the boxes as they unloaded a ship, and the practice was often a necessary one if they were to perform their job with the equipment supplied by the stevedore company. Plaintiff had never been instructed not to stand on the banana boxes as he unloaded a ship although he had unloaded bananas on between 25 and 40 occasions in the past. He had never seen a banana box give way under a man's weight.

As he acted as a middle man in his crew, plaintiff stood on a banana box to receive the upper box of a tier from the top man. He took a 50-pound box handed to him. When plaintiff started to swing the box to the bottom man, the carton under his left heel collapsed six to seven inches, causing him to lose his balance, lurch, and twist his back. The lawsuit seeks recovery for plaintiff's resulting injury.

The trial court granted defendant's motion for summary judgment, and this appeal followed.

A defendant moving for summary judgment has the burden of establishing that the plaintiff's action has no merit. He must make a factual showing negating the existence of a cause of action on all theories embodied in the complaint. If he fails in that burden, summary judgment must be denied despite any deficiency in the plaintiff's responding declarations. (*Jack* v. *Wood* (1968) 258 Cal.App.2d 639, 647 [65 Cal.Rptr. 856].)

Applicable substantive law determines the facts necessary to support a particular theory of relief and hence the sufficiency of properly framed factual statements in declarations to support a summary judgment. Here the applicable substantive law is the federal Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. §§ 903-905) and the cases construing it. The 1972 amendments to that act, in expanding the rights of an injured longshoreman against his employer, removed his previously existing cause of action against the vessel upon which he was working based upon the doctrine of unseaworthiness. The amendments leave the longshoreman with an action against the vessel based upon negligence if negligence of its agents exists. The apparent legislative intent, however, is to preserve an action for negligence based upon federal and not local state standards. The report of the Senate Committee on Labor and Public Welfare concerning the amendments states that they do not "intend that the negligence remedy authorized in the bill shall be applied differently in different ports depending on the law of the State in which the port may be located. The Committee intends that legal questions which may arise in actions brought under these provisions of the law shall be determined as a matter of Federal law." (Senate Report No. 92-1441, 3 U.S. Code Cong. & Admin. News 4698, 4705 (1972); *Hite* v. *Maritime Overseas Corporation* (E.D. Tex. 1974) 380 F.Supp. 222, 225; *Birrer* v. *Flota Mercante Grancolombiana* (D.Ore. 1974) 386 F.Supp. 1105; see also *Pope & Talbot, Inc.* v. *Hawn* (1953) 346 U.S. 406 [98 L.Ed. 143, 74 S.Ct. 202]; *Vittone* v. *American President Lines* (1964) 228 Cal.App.2d 689, 693 [39 Cal.Rptr. 758].)

The federal law delineates the duty of a ship to longshoremen, employees of an independent contractor, engaged in work in loading or unloading her in a much narrower scope than the duty of a California land occupier to persons on his premises. Borrowing on the rules established by decisions dealing primarily with the duty of the ship to the

stevedore company (see e.g., *Metropolitan Steve. Co.* v. *Dampskisaktie-selskabet Int.* (9th Cir. 1960) 274 F.2d 875, cert. den., 363 U.S. 803 [4 L.Ed.2d 1147, 80 S.Ct. 1237], affirming *sub. nom. Hugev* v. *Dampskisak-tieselskabet International* (S.D.Cal. 1959) 170 F.Supp. 601; *Ramirez* v. *Toko Kaiun K.K.* (N.D.Cal. 1974) 385 F.Supp. 644), federal decisions construing the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act define the duty in limited terms.

■ There is not a nondelegable duty on the part of the ship or her owners to provide the longshoreman with a safe place to work, that duty having been precluded by the 1972 amendments eliminating the longshoreman's cause of action based upon unseaworthiness. (*Bess* v. *Agromar Line* (4th Cir. 1975) 518 F.2d 738, 740-742; *Ramirez* v. *Toko Kaiun K.K., supra* (N.D.Cal. 1974) 385 F.Supp. 644, 653.) ■ Rather, the ship and her agents have a duty to refrain from active negligence, to warn or take corrective action where they know or should know of a latent dangerous condition (*Bess* v. *Agromar Line, supra* (4th Cir. 1975) 518 F.2d 738, 741) or of a patent dangerous condition which a reasonable person should anticipate as imposing an unreasonable risk of harm to one on notice of it (*Crowshaw* v. *Koninklijke Nedlloyd B.V. Rijswijk* (D.Ore. 1975) 398 F.Supp. 1224, 1230), and to have the ship in a reasonable condition for use by the stevedore company in light of its expertise. (*Hite* v. *Maritime Overseas Corporation, supra* (E.D.Tex. 1974) 380 F.Supp. 222; *Frasca* v. *Prudential-Grace Lines, Inc.* (D.Md. 1975) 394 F.Supp. 1092, 1100-1101.) ■ Ordinarily, the ship and her owners have no duty to warn of, or remedy, a dangerous condition which is obvious or which would be obvious if ordinary care were observed by the longshoreman or his superiors in the stevedore company. (*Fedison* v. *Vessel Wislica* (E.D.La. 1974) 382 F.Supp. 4, 7-8.) ■ The ship and her owners owe no duty to protect against dangerous conditions arising during performance of the stevedore's work. (*Hite* v. *Maritime Overseas Corporation, supra* (E.D.Tex. 1974) 380 F.Supp. 222, 227.)

■ The primary responsibility for the safety of the longshoreman lies with the stevedoring company because it is in the position best to provide for the safe unloading of a ship. (*Ramirez* v. *Toko Kaiun K.K., supra* (N.D.Cal. 1974) 385 F.Supp. 644, 653.) "[It is] within the expertise of the stevedore and among its responsibilities as an independent contractor to conduct the loading [or unloading] operations in a safe manner. This necessarily include[s] the obligation to discover and remedy dangerous conditions in the stow . . ." (*Fedison* v. *Vessel Wislica, supra* (E.D.La. 1974) 382 F.Supp. 4, 8.) ■ The ship and its owners are under no

obligation to provide equipment which will make the loading or unloading safe. (*Bess* v. *Agromar Line, supra* (4th Cir. 1975) 518 F.2d 738, 742.) They reasonably may rely upon the expertise of the stevedore and longshoremen to recognize patent dangerous conditions and to protect against the danger. (*Anuszewski* v. *Dynamic Mariners Corp. Panama* (D.Md. 1975) 391 F.Supp. 1143, 1146; cf. *Crowshaw* v. *Koninklijke Nedlloyd B.V. Rijswijk, supra* (D.Ore. 1975) 398 F.Supp. 1224, where vessel's agents participate in loading or unloading.)

The thrust of the federal cases construing the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act is thus to place the primary burden of providing a safe place and equipment for the longshoreman's work upon the stevedore company while relieving the ship and her owners of that obligation except for warning against dangerous defects which the stevedore and longshoreman cannot, with the exercise of reasonable care in light of their expertise, discover or reasonably be expected to protect against. The limitation tracks the effect of the 1972 amendments which not only decreased the scope of the ship and her owner's duty by eliminating liability for unseaworthiness but also eliminated the ship and her owner's cause of action-over against the stevedore company for its negligence. (33 U.S.C. § 905(b).) Unless the ship and her owner's duty to longshoremen is narrowly structured, the elimination of the cause of action in their favor against the stevedore for its negligence prevents the shift of loss in tort to the more culpable party actively at fault.

*Johnson* v. *Canadian Transportation Co.* (1976) 54 Cal.App.3d 827 [127 Cal.Rptr. 72], the one California case dealing with the scope of the vessel's duty to longshoremen is contrary to the federal cases. It rests its decision in part upon the proposition that where a vessel's agents assume supervision of longshoremen employed by a stevedore, the vessel's agents also undertake reasonable precautions for safety of the longshoremen. (See Rest.2d Torts, § 414.) However, it also reaches a result holding the vessel liable to a longshoreman by relying upon sections 413 and 416 of the Restatement Second of Torts to apply a theory that the vessel is liable for defects in unloading equipment furnished by the stevedore company if the equipment, as maintained and used, presents an unreasonable risk of harm. (See also dictum in *Standard Fruit Co.* v. *Metropolitan Stevedore Co.* (1975) 52 Cal.App.3d 305, 312, fn. 2 [125 Cal.Rptr. 111].)

*Johnson* is founded on the premise that the federal courts have not defined the scope of vessel negligence within the meaning of the 1972

amendment to the Longshoremen's and Harbor Workers' Compensation Act. (54 Cal.App.3d at p. 836: ". . . the meaning of the act does not appear to have been interpreted by any federal court . . . .") Because of the special expertise of the federal courts in the application of maritime law, the federal cases are particularly persuasive in the case at bench. It is impossible to know what the *Johnson* court would have done had it been aware of them. *Johnson* is thus of limited precedential value.

Proceeding on the premise that there are no federal cases dealing with the scope of the vessel's duty to longshoremen employed by the independent stevedore contractor, *Johnson* also applies sections 413 and 416 of the Restatement Second of Torts without analysis of the underpinnings of those sections in light of the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act. That analysis indicates a limited application of the Restatement provisions in the context of the case at bench.

Restatement Second of Torts, section 413 provides that "One who employs an independent contractor to do work which the employer [of the contractor] should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer (a) fails to provide in the contract that the contractor shall take such precautions, or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions."

Restatement Second of Torts, section 416 states: "One who employs an independent contractor to do work which the employer [of the contractor] should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise." (See also Rest. 2d Torts, § 427, providing vicarious liability where an independent contractor is employed to do work involving a special danger inherent in or normal to the work.)

The principal distinction in application of sections 413 and 416 of the Restatement Second of Torts concerns the "employer" and independent contractor engaged by him and not the liability of the

"employer" to others. Where there is a special risk of physical harm, the "employer" is liable to third persons injured as a proximate result of the independent contractor's negligence whether or not there is an agreement requiring the independent contractor to take special precautions. The liability rests on either of two theories. Failure to act reasonably to provide for special precautions by contract or otherwise is direct negligence. Where the "employer" satisfies that duty by contract, he may nevertheless be vicariously liable on the separate nondelegable duty to take the precautions. The existence of the contract, while not affecting the rights of others, does, however, significantly affect the rights of the "employer" and independent contractor by obligating the independent contractor to indemnify the "employer" for loss occasioned by his liability to others. (Rest.2d Torts, § 413, com. e.)

The special relationship between a vessel and stevedore-independent contractor developed by the maritime law significantly affects application of sections 413 and 416 in the vessel-stevedore context.

The direct duty to act reasonably to provide by contract for special precautions enunciated in section 413 is measured by the "employer's knowledge and experience." (Rest.2d Torts, § 413, com. f.) The recognition of the special expertise of the stevedore and longshoremen in loading and unloading a vessel thus rationalizes with section 413 the federal decisions imposing on the stevedore a special duty to provide safety precautions in performing those tasks, while fastening only a limited duty upon the vessel. (See *Anuszewski v. Dynamic Mariners Corp. Panama, supra* (D.Md. 1975) 391 F.Supp. 1143, 1148-1149.)

The "employer's" vicarious liability for an independent contractor's negligence created by section 416 of the Restatement Second of Torts is predicated upon the ability of the "employer" to provide by contract for indemnity from the independent contractor for loss occasioned by the contractor's negligence. (Rest. 2d Torts, § 416, com. c.) The Longshoremen's and Harbor Workers' Compensation Act as amended provides, however, that in the case of injury to a longshoreman a contractual indemnity provision of the type envisioned by section 416 is "void." (33 U.S.C. 905(b); *Standard Fruit Co.* v. *Metropolitan Stevedore Co., supra,* 52 Cal.App.3d 305, 309.) Since the indemnity base for section 416 does not exist in the maritime law of injury to a longshoreman, the section does not accomplish its full purpose. The frustration of purpose of section 416 rationalizes the federal case law

contrary to the broad sweep of section 416 where injury to a longshoreman is involved.

Thus the federal cases and not Restatement Second of Torts, sections 413 and 416 in their full scope establish the principles which guide our decision in the case at bench. The factual frame established by the declarations in support of and in opposition to the motion for summary judgment must be examined in light of those principles.

No affirmative acts of negligence are claimed by plaintiff. The declarations presented by defendant establish, without contradiction by declarations filed by plaintiff,[1] that plaintiff's contentions of liability based upon defendant's conduct in shipping and storing the bananas and imposition of an unsafe work method are unfounded. Whatever may have been the defect in the manner in which the banana boxes were stowed in the ship, lack of safety in the process of unloading some and restacking other of the boxes was due to the method employed by the stevedore, particularly its failure to use some mechanism to distribute weight of the longshoreman over more than one box. Any defect in the stow of the boxes or danger in the method necessary to unload and restack them was equally or more apparent to the expert plaintiff and his expert employer, the stevedore company, than to defendant. Supervisory personnel of the stevedore were aware of the danger of unloading some boxes by standing on others and routinely, albeit futilely, warned longshoremen against the practice. A reasonable vessel operator could properly assume that the stevedore and its longshoreman would adopt necessary protective measures. On facts strikingly similar to the case at bench, the federal courts have held that a longshoreman injured while unloading a vessel when he stepped in a hole in stowed bales of cotton can not recover from the vessel (*Fedison* v. *Vessel Wislica, supra* (E.D.La. 1974) 382 F.Supp. 4), and that a longshoreman injured when he stepped into a hole in a previously stowed cargo of bags of flour is similarly barred (*Citizen* v. *M/V Triton* (E.D.Tex. 1974) 384 F.Supp. 198).

Plaintiff's theory of recovery, based upon the proposition that the banana boxes were poorly constructed and not designed for the purpose intended, is another matter. Defendant's declarations have not negatived the proposition that the boxes may have been so designed as to

---

[1]In his closing brief, plaintiff argues that he was prevented from opposing the motion for summary judgment fully by his failure to complete discovery and investigation. That argument is foreclosed because it was not set out in a declaration opposing the motion. (Code Civ. Proc., § 437c.)

present a latent defect not inherent in banana boxes generally and not as readily observable by the stevedore and its employees as by the ship's agents.

██ We thus conclude that the nature of the causes of action in the case at bench must be determined by the complaint as it has been refined by plaintiff's responses to defendant's interrogatories seeking plaintiff's contentions. As the case is so refined, defendant has established that there is no triable issue of fact and that it is entitled to judgment to the extent that plaintiff seeks to predicate defendant's negligence upon the theories of conduct of the defendant in shipping and stowing the bananas or upon defendant's imposition of an unsafe work method. ██ Defendant has not refuted the existence of a triable issue of fact concerning a latent defect in the boxes themselves. To the extent the summary judgment encompasses that issue, it must be reversed.

The judgment is reversed. The matter is remanded to the trial court so that it may reconsider defendant's motion in light of the provisions of Code of Civil Procedure section 437c empowering it to specify that some of the issues of the case at bench are without substantial controversy and to order that such issues are deemed established, with the trial to proceed only on remaining issues.

Wood, P. J., and Hanson, J., concurred.

A petition for a rehearing was denied April 30, 1976, and appellant's petition for a hearing by the Supreme Court was denied July 8, 1976. Mosk, J., was of the opinion that the petition should be granted.