Rachael **CUMMINGS**

v.

**"SIDARMA" SOC.**

**Civ. A. No. 74–58.**

United States District Court,
E. D. Louisiana.

March 8, 1976.

Bruce W. Dinwiddie, Ungar, Dulitz, Jacobs & Manuel, New Orleans, La., for Rachael Cummings.

Charles F. Lozes, Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for "Sidarma" Soc.

## MEMORANDUM AND ORDER

JACK M. GORDON, District Judge.

Defendant Sidarma has moved for summary judgment in this matter. Oral argument was heard on October 1, 1975, after which the Court took the motion under submission.

### FACTS

Plaintiff, Rachael Cummings, has instituted suit as the representative of the estate of her deceased husband, Preston Cummings. On June 5, 1973, decedent was employed by T. Smith and Son as a longshoreman. His duties on that date included assisting in the discharge of the M/V ENRICO DANDOLO, which was owned by the defendant Sidarma.

At the time in question, Preston Cummings, Jesse Spears and Louis Brooks were in the process of discharging baled rubber from the No. 4 hatch in the lower hold. Across the aft end of the hold, several cartons of refrigerator parts had been stowed. In order to "block" the refrigerator parts, baled rubber was stowed immediately forward and on either side of the refrigerator parts. In order to gain access to the refrigerator parts, it was necessary to first discharge the rubber which was done on a tier by tier method. As the discharging of the bales of rubber continued, both Spears and Brooks observed the bales on either side of the refrigerator parts which became exposed as the various bales were being removed. When the bales were observed by the longshoremen, they took no steps to insure that they would not fall. The three longshoremen discussed the situation in reference to the bales (Brooks deposition, p. 17). However, the condition was not reported to anyone in the vessel's crew. (Brooks deposition, p. 17; Spears deposition, p. 29). As the men continued to discharge the bales, one of the bales which had been left between the boxes of refrigerator parts and the skin of the ship fell, struck Cummings and caused injuries of which he subsequently died.

Defendant has now moved for summary judgment on the ground that the control of the discharge operation was under the exclusive management and control of the stevedore company. Defendant alleges that this is not a case of vessel negligence and the responsibility for the accident is solely on the stevedore company for failing to carry out the duties of the discharge operation in a safe and workmanlike manner.

In an attempt to shift the responsibility for the control of the discharging operation to the stevedoring crew, defendant lists the following as uncontested material facts: several bales of rubber were stowed between the refrigerator parts and the skin of the ship. The bales were not removed, but were left in position by the longshoremen. Both Brooks and Spears knew of the location of the bales before the accident in question. Brooks felt it was possible for one of the bales to fall and was keeping an eye on them. These bales of rubber had not yet been discharged and could not be observed from the main deck level. The vessel's chief mate was engaged in his routine cargo watch on the main deck level at the time of the accident.

Through a supplemental statement of material facts, defendant has attached the affidavit of J. L. Provozano who was employed by T. Smith and Son as a stevedoring superintendent aboard the M/V ENRICO DANDOLO on the date of the accident. Provozano states that T. Smith and Son had responsibility for discharging the cargo. In addition, it

was proper and customary to stow the baled rubber in the natural voids that are created in stowing other cargo. It was not necessary, nor was it expected, for the chief mate of the vessel to advise the stevedores of the void spaces. This is a situation that the stevedore is required to handle. The longshoremen are expected to report to their foreman or superintendent any difficulty they may encounter in removing cargo from void spaces.

Charles L. Reiner, Jr., a cargo damage expert, stated in his deposition that as a practical matter, the placing of lashing wires or cable across the hold would have insured the bales from falling. (Reiner deposition, p. 42). These lashing wires are readily available and the normal chain of command for accomplishing this task would have been for the longshoremen to consult with their foreman who in turn would make the request to the stevedore superintendent who would have obtained the wire from the mate.

## LAW

Plaintiff, a longshoreman, seeks to hold the defendant vessel owner negligent for a condition of the vessel's stow known to the stevedoring crew. The liability of a vessel owner to a stevedore in such a situation is governed by the Longshoremen's and Harbor Workers' Compensation Act and in particular by the 1972 amendments to that Act. The legislative history of the amendments are set forth in the Report of the House of Representatives Committee on Education and Labor which considered the amendments.

The Committee pointed out that under the old Longshoremen's Act, vessels have been held to what amounts to absolute liability by decisions of the United States Supreme Court, commencing with *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) which held that the traditional seamen's remedy based on the breech of the vessel's absolute nondelegable duty to provide a seaworthy vessel was also available to longshoremen and others who performed

work on the vessel which by tradition has been performed by seamen. The Committee rejected the principle that a vessel should be liable without regard to its fault for injuries sustained by employees covered by the Longshoremen's Act while working on board. *See* 3 *U.S. Code Congressional and Administrative News*, 1972, pp. 4703–4704.

The Senate and House Committees provided the following comments relating to third party actions against the vessel under the amended Act:

. . . The Committee intends that on the one hand an employee injured on board a vessel shall be in no less favorable position 'vis a vis' his rights against the vessel as a third party than is an employee who is injured on land, and on the other hand that the vessel shall not be liable as a third party unless it is proven to have acted or have failed to act in a negligent manner such as would render a land-based third party in non-maritime suits liable under similar circumstances. Senate Committee Report No. 92–1125.

. . . Thus a vessel shall not be liable in damages for acts or omissions of stevedores or employees of stevedores subject to this Act . . . House Committee Report No. 92–1441.

Thus, under the amended Act, a longshoreman can no longer recover against the ship by reason of negligence of a stevedoring contractor by means of loading or unloading which render the ship unseaworthy. *Baker v. Cristobal*, 488 F.2d 331 (5th Cir. 1974). The duty of a vessel owner to an injured longshoreman, under the amended Act, has been interpreted as follows:

The owner of a premise who contracts with an independent contractor (business invitee) to perform services for the owner upon the owner's premises owes a duty to the independent contractor and his employees to exercise reasonable care to have the premise in a reasonably safe condition for use by the independent contractor

and to give said contractor warning of any concealed or latent defects that are known by the owner and not by the independent contractor. The owner of a premise is under no duty to warn the independent contractor or his employees of dangers or open and obvious defects which are known to the independent contractor or his employees or which could be readily observed by said employees in the exercise of ordinary care. *Hite v. Maritime Overseas Corporation*, 380 F.Supp. 222 (E.D.Tex.1974), and cases cited therein. *See also, Croshaw v. Koninklijke Nedlloyd, B.V. Rijswijk*, 398 F.Supp. 1224 (D.Ore.1975); *Fitzgerald v. Compania Naviera La Molinera*, 394 F.Supp. 413 (E.D.La.1975); *Ramirez v. Toko Kaiun K.K.*, 385 F.Supp. 644 (N.D.Cal.1974).

■ Similarly, in the case at bar, the undisputed facts clearly indicate that the longshoremen knew of the position of the bales during their discharge of cargo. The condition was obvious and the location of the bales was exposed during the routine discharge operation. As such, there can be no breech of the shipowner's duty under the amended Act.

In a case remarkably on point, *Fedison v. Vessel Wislica*, 382 F.Supp. 4 (E.D.La. 1974), plaintiff was injured aboard the defendant's vessel, the Wislica, while attempting to roll and stow a 600-pound bale of cotton. The Court, in denying relief to the plaintiff, held as follows:

The plaintiff seeks to hold the vessel liable for the condition of the stow, alleging that the defendant breeched its duty to provide him with a safe place to work. By this argument, however, the plaintiff seeks to circumvent the expressed intent of the 1972 amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), to abolish actions by longshoremen against the vessel based upon a breech of warranty of seaworthiness. To be sure, the imperfections in the stowage of the *Wislica* may have been sufficient to have rendered the vessel unseaworthy. But the facts of this case fail to show the vessel acted negligently with respect to the conditions in the hold. The duty to discover and remedy a dangerous condition caused by the holes and cracks which often develop between crates in the stow was clearly one of the responsibilities of the stevedore, Louisiana Stevedores, Inc., which had control over the work being done in the hold. The vessel is not negligent for a breech of a duty owed by the stevedore. (382 F.Supp. 4, 6).

In a supplemental memorandum opinion, the Court in *Fedison* stated further:

There is no doubt that the stevedore which employed the plaintiff was an independent contractor hired by the vessel to load cargo. The plaintiff was therefore a business invitee of the vessel. It is black-letter law that the owner of a premise owes no duty to warn an invitee of a defect or danger which is known to him or which is as well known to the invitee as to the owner, or which is obvious or which should be observed by the invitee in the exercise of ordinary care. (382 F.Supp. 4, 7).

*See also, Griffith v. Wheeling Pittsburgh Steel Corporation*, 521 F.2d 31 (3rd Cir. 1975); *Frasca v. Prudential-Grace Lines, Inc.*, 394 F.Supp. 1092 (D.Md.1975); *Anuszewski v. Dynamic Mariners Corp. Panama*, 391 F.Supp. 1143 (D.Md.1975).

■ In summary, a vessel owner owes no duty to warn longshoremen of open or obvious defects, or dangers which could be readily observed by the stevedores in the exercise of ordinary care. Plaintiff's argument that the vessel's chief mate, Giovanni Scarfi, stated in his deposition that his duties included supervising the disembarking operations and working with the superintendent of stevedores, is without merit and not material to the issue before the Court. When a danger is open and obvious, the shipowner's knowledge of such a danger is immaterial to the imposition of liability under the amended Act. Here, the

facts are undisputed that the condition of the hold was obvious to the longshoremen. Despite their knowledge of a potentially dangerous situation, the longshoremen continued to discharge the cargo without taking adequate safety precautions. It was exactly in situations such as this that the Longshoremen's and Harbor Workers' Compensation Act, as amended, was designed to protect vessel owners. The duty of care owed by vessel owners has been compared to the duty owed by landowners to business invitees. Vessel owners are no longer insurers of longshoremen's safety; nor are they to be held liable for injuries arising from dangers that are known and obvious to the longshoreman.

Accordingly, the motion for summary judgment on behalf of "Sidarma" Soc., is hereby GRANTED.